OPINION. Black, Judge-. Briefly, the issues, as previously stated in greater detail, are (1) whether the net income of $64,379.15 realized from the operation of the S. S. Leslie for the fiscal year period beginning March 14,1941, and ending February 28,1942, is taxable to the Worth Steamship Corporation, and (2) whether the individual petitioners are liable as transferees for the taxes and interest due from the corporation. As to issue (1), the respondent in his brief opens his argument with the statement that “Where income is derived from property, the basic test for determining who is to bear the tax is that of ownership,” citing Pollock v. Farmers’ Loan & Trust Co., 158 U. S. 601, and Eisner v. Macomber, 252 U. S. 189. We think that statement is fundamentally correct. Applying that test, however, to the facts set out in our findings, we are unable to conclude that Worth was the owner of the income in question. We think these facts show that the joint venture, consisting of Sherover, Gillmor, and Freeman, was the real owner of the income. Sherover and Gillmor bought the Leslie and then, because of Freeman’s experience as an operator, agreed to sell him a one-eighth interest in the ship. Sherover and Freeman were to operate the vessel for the account of the three joint venturers at a monthly fee of $1,800. These two men then organized Worth and turned over the operation of the Leslie to it for the account of the joint venture at the same monthly fee of $1,800. Worth has returned these operating fees on its own income tax return for the taxable period. Freeman suggested that Worth could operate the vessel with more convenience if it also had the record title to the ship. When Sherover and Gillmor purchased the ship the record title was taken in Sherover’s name. In response to Freeman’s suggestion Sherover transferred such title to Worth without informing Gillmor. It was understood, however, that Worth was merely to operate the vessel, collect the income, pay the expenses, including its own monthly fee of $1,800, and turn over the balance to the joint venturers, the beneficial owners of the vessel. These understandings were finally reduced to writing in September 1941 in the forms of the joint venture agreement, the operating agreement, and the declaration of trust. The first two agreements were dated back to March 15, 1941, and the declaration of trust was dated back to April 10,1941, the date Sherover transferred the record title to Worth. This was done because these agreements put into writing what had been the oral understanding of the parties. All the business transactions concerning the Leslie were handled in accordance with these agreements. Sherover and Gillmor each received 48.75 per cent of the net income of the ship and 12.50 per cent thereof was received by Freeman. Gillmor was never a stockholder of Worth. The latter issued only $100 worth of stock and that was subscribed and paid for and owned equally by Sherover and Freeman. On the basis of the facts, we hold that Worth was not the owner of the income in question. We think the facts in the instant proceedings bring them within the ambit of such cases as Parish-Watson & Co., 2 B. T. A. 851. In that case four individuals who were members of a joint venture engaged in the business of buying and selling art collections, decided to incorporate the joint venture and make it a permanent business. In the joint venture, all four members were equal participants in a one-half share of certain art obj ects. In the corporation, however, the four stockholders were to have varying shares in the common stock. The joint venturers transferred their one-half interest in the art objects to the corporation at their cost under an agreement that the net profits that might thereafter arise from the sale of the art objects so transferred should be paid over to the joint venturers in equal shares, the corporation under no circumstances to have any interest in the net profits from the sale thereof. In holding that the profits there in question were income to the four joint venturers rather than income to the corporation, we said in part: * * * If, as contended by the Commissioner, the profits involved herein belonged to the corporation, the four men named would not have had an equal interest therein, since they owned unequal amounts of the common stock of the corporation, and any excess of earnings over'the amount necessary to pay dividends on the preferred stock would have been available to pay dividends on the common stock, which is the thing they desired to avoid. * * * An examination of the record in this case clearly shows that Worth was at no time the beneficial owner of the S. 8. Leslie, and the record further shows that the interests of Sherover and Freeman were substantially different in the joint venture than in Worth and that, while Gillmor had an interest in the joint venture, he had absolutely no interest in Worth. Accordingly, the conclusion is inescapable that, according to the basic test to be applied, that of ownership, Worth is not taxable on the income from the operations of the 8. S. Leslie. The respondent relies principally upon such cases as Higgins v. Smith, 308 U. S. 473, and Moline Properties, Inc. v. Commissioner, 319 U. S. 436. In so doing he disregards entirely the agreements and declaration of trust that were finally signed in September of 1941 and dated back to March and April of that year, and he argues that such agreements were “concocted” and a sham. The evidence does not support such an argument. Sherover, Gillmor, and Freeman all testified at the hearing. Their testimony amply supports the facts as found in our findings and was not shaken on cross-examination. On the basis of such facts, the cases relied upon by the respondent are not applicable. Likewise, in attempting to distinguish the Parish-Watson & Co. case, supra, the respondent in his brief says that in that case “the variance of interest of the joint venturers in the joint venture from that in the corporation was legitimate, bona fide and for a valid, reasonable business purpose. In the instant case it was a sham.” It was never the intention of Sherover and Freeman that Worth should do any more than operate the vessel for the account of the joint venture, as the individuals Sherover and Freeman had originally agreed to do. Gillmor had nothing to do with the organization of Worth. He was not a stockholder thereof and was interested only in having the Leslie operated for his own account and for the account of the other two joint venturers. This is well substantiated by the record. We, therefore, do not agree with the respondent that in the instant case the variance of interest of the joint venturers in the joint venture from that in the corporation was a sham. We hold that Worth is not taxable on the income from the operation of the Leslie. Cf. Central Life Assur. Soc., Mut. v. Commissioner, 51 Fed. (2d) 939. In view of our holding on the first issue, the transferee issue becomes of little importance. The adjustments to the net income of Worth as shown in the statement attached to the deficiency notice to Worth are as follows: Net income as disclosed by return- $1,551.75 Unallowable deductions and additional income: (a) Income from operation of steamship “Leslie”_$104,381.44 (b) Capital stock tax_ 95. OO (c) Repairs_ 500. 00 (d) Legal fees_ 125.00 105,101.44 Net income as adjusted- 106,653.19 After eliminating adjustment (a), the adjusted net income is only $2,271.75. It is apparent that the recomputation under Rule 50 will probably show no deficiency in declared value excess profits tax, no deficiency in excess profits tax, and only a small deficiency in income tax. On March 26, 1946, Worth had an actual cash balance on hand of $837.48, which will probably be sufficient to pay the deficiency in income tax plus interest as provided by law, and the issue of transferee liability becomes of slight importance. However, that issue having been submitted to us under the pleadings, it must be decided. Inasmuch as none of the amounts paid Sherover, Gillmor, and Freeman shown in our findings of fact were paid to them as stockholders of Worth, but were paid to them because of their rights as joint ven-turers and under the contracts and agreements to which we have already referred, they did not receive any of the property of Worth, but only their own property. We, therefore, hold that Sherover, Gill-mor, and Freeman are not liable as transferees of Worth. In Docket No. 7698 decision will be entered wader Rule 50. In Docket Nos. 7697, 7699, and 77Ul decisions will be entered that petitioners are not liable as transferees.